**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DAVID STEBBINS,<br><br>       *Plaintiff*,<br><br>  v.<br><br>GOOGLE LLC and RUMBLE INC.,<br><br>       *Defendants*. | Case No. 1:24-mc-00478 |

**RUMBLE INC.'S OPENING BRIEF IN SUPPORT OF
ITS MOTION TO QUASH**

**Of Counsel:**

Gregory J. Dubinsky*
Nicholas H. Hallock*
**HOLWELL SHUSTER
& GOLDBERG LLP**
425 Lexington Avenue
14th Floor
New York, New York 10017
Phone: (646) 837-5151
Email: gdubinsky@hsgllp.com
    nhallock@hsgllp.com

March 19, 2026

* Motion *pro hac vice* forthcoming

**HALLORAN FARKAS + KITTILA LLP**

Theodore A. Kittila (Bar No. 3963)
5722 Kennett Pike
Wilmington, Delaware 19807
Phone: (302) 257-2011
Email: tk@hfk.law

*Attorneys for Rumble Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .......................................................................................................................2

     A. The Acerthorn Video. ..................................................................................................2

     B. The Spectre Video and this Action. ............................................................................4

ARGUMENT ............................................................................................................................6

   I. THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT FAILS TO GIVE RUMBLE REASONABLE TIME TO COMPLY ....................................................6

  II. THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT VIOLATES THE SPECTRE REPORT AND RUMBLE'S FIRST AMENDMENT RIGHTS ..............7

     A. Section 512(h) Subpoenas in Violation of the First Amendment Are Invalid...............7

     B. The Spectre Video Involved Core Political Speech Meriting Heightened Protection....................................................................................................8

     C. The Balance of Harms Favors Quashing Mr. Stebbins's Subpoena. ..........................10

CONCLUSION.......................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Art of Living Foundation v. Does 1-10*,
    2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) ................................................................*passim*

*Auteri v. Via Affiliates*,
    2025 WL 1094251 (E.D. Pa. Apr. 11, 2025) ............................................................... 6

*Baugher v. GoDaddy.com LLC*,
    2021 WL 4942658 (D. Ariz. Oct. 22, 2021) ......................................................... 9, 11

*Doe v. Cahill*,
    884 A.2d 451 (Del. 2005) ........................................................................................ 8

*Enterline v. Pocono Med. Ctr.*,
    751 F. Supp. 2d 782 (M.D. Pa. 2008) ...................................................................... 7

*Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*,
    457 U.S. 596 (1982) ................................................................................................ 9

*Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*,
    2011 WL 5429005 (E.D. Pa. Nov. 7, 2011) ............................................................ 6

*In re Anonymous Online Speakers*,
    661 F.3d 1168 (9th Cir. 2011) ............................................................................. 7, 8

*In re DMCA Subpoena to GoDaddy.com, LLC*,
    2025 WL 3551922 (D. Md. Dec. 11, 2025) ............................................................ 9

*In re Frontier Commc'ns Corp.*,
    666 B.R. 260 (Bankr. S.D.N.Y. 2025) ................................................................... 13

*Kechara House Buddhist Ass'n Malaysia v. Does*,
    2015 WL 5538999 (N.D. Cal. Sept. 18, 2015) ....................................................... 9

*Landmark Commc'ns, Inc. v. Virginia*,
    435 U.S. 829 (1978) ................................................................................................ 9

*Lombardo v. Coslett*,
    2013 WL 12406801 (M.D. Pa. Nov. 20, 2013) ....................................................... 6

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995).................................................................................... 1, 2, 7, 8

*McVicker v. King*,
    266 F.R.D. 92 (W.D. Pa. 2010) .............................................................................. 7

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024).............................................................................................. 12

*Moon v. Greer*,
    144 S. Ct. 2521 (2024)............................................................................................ 3

*Munroe v. Cent. Bucks Sch. Dist.*,
   805 F.3d 454 (3d Cir. 2015) ........................................................................ 10

*Rad v. Att'y Gen.*,
   983 F.3d 651 (3d Cir. 2020) ...................................................................... 1, 2

*Raw Films, Ltd. v. John Does 1-15*,
   2012 WL 1019067 (E.D. Pa. Mar. 26, 2012)............................................. 7, 8

*Reno v. ACLU*,
   521 U.S. 844 (1997)......................................................................................... 8

*Signature Mgmt. Team, LLC v. Automattic, Inc.*,
   941 F. Supp. 2d 1145 (N.D. Cal. 2013) .......................................................... 7

*Signature Mgmt. Team, LLC v. Doe*,
   2015 WL 13036681 (E.D. Mich. Nov. 4, 2015)............................................. 9

*Signature Mgmt. Team, LLC v. Doe*,
   876 F.3d 831 (6th Cir. 2017) ........................................................................ 11

*Smythe v. Does*,
   2016 WL 54125 (N.D. Cal. Jan. 5, 2016)....................................................... 9

*Snyder v. Phelps*,
   562 U.S. 443 (2011)............................................................................... 8, 9, 11

*Stebbins v. Rumble Inc.*,
   24-cv-1174, D.I. 11 (D. Del. May 13, 2025) ................................................. 5

*Talley v. California*,
   362 U.S. 60 (1960)........................................................................................7-8

*Verisign, Inc. v. XYZ.com, LLC*,
   2015 WL 7960976 (D. Del. Dec. 4, 2015) ..................................................... 6

**Statutes**

17 U.S.C § 512....................................................................................... 5, 7, 12

**Rules**

Fed. R. Civ. P. 45............................................................................... 1, 6, 7

**Other Authorities**

Chris Pavlovski, *Written Statement of Rumble Founder and CEO Chris Pavlovski*,
   U.S. House Committee on Small Business (June 26, 2024)........................... 1

Rumble, *Rumble: the Freedom-First Technology Platform* ................................ 1

Defendant Rumble Inc. ("Rumble"), pursuant to Fed. R. Civ. P. 45(d)(3)(A)(i) and (iii), hereby moves to quash the subpoena *duces tecum* (the "Subpoena") issued by Plaintiff David Stebbins to Rumble.

## PRELIMINARY STATEMENT

Rumble is an online platform that "believe[s] society flourishes when open dialogue, varied opinions, and new ideas are accessible to all."  Rumble, *Rumble: the Freedom-First Technology Platform*.[1]  As Rumble CEO Chris Pavlovski has attested before Congress, "Rumble was founded upon" "the principle" that "[i]ndividuals have the ability to form their own opinions, express their own ideas, and access information freely."  Chris Pavlovski, *Written Statement of Rumble Founder and CEO Chris Pavlovski*, U.S. House Committee on Small Business, at 2 (June 26, 2024).[2]  By this motion to quash a subpoena seeking to deanonymize a Rumble user who spoke on matters of public concern, Rumble seeks to vindicate the core First Amendment principles that are at the heart of Rumble's mission.

Mr. Stebbins's subpoena seeks the identity of a Rumble user who posts videos anonymously under the name "the Spectre Report."  Mr. Stebbins maintains that he will sue the Spectre Report for copyright infringement relating to a video he posted on rumble.com.  The allegedly infringing video by the Spectre Report, however, discussed a matter of public concern and formed part of a series in which the Spectre Report criticized Mr. Stebbins's actions in litigation.  As is well established, "restrictions on an author's ability to 'remain anonymous' . . . implicate 'the freedom of speech protected by the First Amendment.'"  *Rad v. Att'y Gen.*, 983 F.3d 651, 662 (3d Cir. 2020) (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995)).

---

[1] Available at https://corp.rumble.com/.

[2] Available at https://www.congress.gov/118/meeting/house/117376/documents/HHRG-118-SM00-20240626-SD004.pdf

Deanonymizing the Spectre Report, therefore, has the potential to subject him to retaliation for his criticism and chill his political speech, thus raising heartland First Amendment concerns.  As the Third Circuit has held:

> In the context of political speech, for example, the Supreme Court has long recognized that anonymity advances the First Amendment's core values:  It enables "[p]ersecuted groups . . . to criticize oppressive practices," empowers "writer[s] who may be personally unpopular to ensure that readers will not prejudge [their] message[s]," and encourages dissidents to voice their "conscience without fear of retaliation."

*Id.* at 662 (quoting *McIntyre*, 514 U.S. at 342).

The Subpoena should be quashed for at least two reasons.  First, the Subpoena fails to give Rumble reasonable time to comply—indeed, it purports to give Rumble ***no time*** to comply.  Second, the Subpoena violates the Spectre Report's First Amendment right to anonymous speech and Rumble's First Amendment right to curate and facilitate speech on its platform, including anonymous speech.

## BACKGROUND

### A.  The Acerthorn Video.

Mr. Stebbins is a prolific content creator who posts videos on YouTube under the name "Acerthorn."  *See* D.I. 2-1, at 6–7.  His YouTube channel features nearly 3,500 videos and has approximately 5,800 subscribers.[3]  Mr. Stebbins is also a serial litigant: On information and belief, he has filed over 50 lawsuits in federal court.[4]

On March 12, 2024, Mr. Stebbins posted a video to his YouTube channel entitled "Kiwi Farms Goes to the Supreme Court; It Will Most Likely Fail, and Here's Why" (the "Acerthorn

---

[3] *See* https://www.youtube.com/results?search_query=%40acerthorn.

[4] A copy of the PACER search results is attached hereto as Exhibit A.

Video").[5]  The Acerthorn Video depicts footage of a video game, with audio from Mr. Stebbins discussing a petition for writ of certiorari filed in *Moon v. Greer*, which was then pending before the Supreme Court.  The petition argued that the Tenth Circuit erred in ruling that the holder of copyrights in a book and song had stated a claim for contributory copyright infringement against the operator of the website Kiwi Farms.  In the Acerthorn Video, Mr. Stebbins described the factual background of the case, the Tenth Circuit's decision, the petition, and the certiorari process.  He then predicted that the Supreme Court would deny the petition, reasoning that the petition failed to identify a circuit split or an issue of national importance.[6]

While Mr. Stebbins agreed that the Supreme Court should deny the petition due to that case's particular facts, he was disturbed by the implications of the Supreme Court's general rule not to take cases merely to correct errors: "[N]ow I know what you're thinking, that sounds f[***]ed up. . . . The court of appeals is basically just given a free pass to do whatever they want with no accountability.  Isn't that basically what that means if the Supreme Court almost never grants certiorari whenever the court of appeals has just violated plainly well-established law?  Isn't that literally what that means?  To that I say, yeah, that's pretty much what it means."  Acerthorn Video at 14:00–38.

The Acerthorn Video also included an extended discussion of government corruption and a call to action to Mr. Stebbins's viewers:

> I have a video on my channel that is nearly six hours long where I explain how the corruption really is as bad as I make it sound, and I even have evidence . . . to back that claim up.  But there is hope . . . . We as a people could conceivably reform the government without the government even getting a say in the matter if we just got off our a[**]es and actually did some proper activism, not slacktivism, not tweeting in outrage.

---

[5] Available at https://www.youtube.com/watch?v=5gXZEesiwvw.

[6] Mr. Stebbins was ultimately correct: The Supreme Court denied the petition on May 13, 2024. *Moon v. Greer*, 144 S. Ct. 2521 (2024).

I mean, actually going around door to door, collecting signatures and getting matters placed on the ballot. That's going to require some actual work from people, but it is the best chance we've got. . . . [T]here's actually a lot of states where we can pass our own laws, they're called [ballot] initiatives, so we can literally make whatever laws we want.

You want to make it illegal for a politician to break a campaign promise? You can do that. You want to provide new avenues for . . . [government] accountability because the existing avenues just aren't good enough? We can do that. You want to require cops to carry body cam[era] footage and to produce that footage in any case in which it is even arguably relevant? Yeah, go ahead.

Acerthorn Video at 14:38–16:50.

## B. The Spectre Video and this Action.

After Mr. Stebbins posted the Acerthorn Video, a user who posts under the pseudonym "the Spectre Report" posted his own video (the "Spectre Video") to rumble.com. According to Mr. Stebbins, the Spectre Video "[was] a full-length reaction, which means that [the Spectre Report] plays and reacts to the entire [Acerthorn Video], literally every single last second of it." D.I. 2-1, at 6 (emphases omitted). The Spectre Video was apparently part of a series of videos in which the Spectre Report has criticized Mr. Stebbins's actions in some of the lawsuits he has filed. Consider just a few of the Spectre Report's videos:

- "Acerthorn Called Out For Fraud in Court: Zellzander's Response[,]" with the description, "We knew David Stebbins was breaking the law, we just needed to see how Zellzander would respond. Now we know";[7]

- "Perjury's a F*[**]ing Crime, David[,]" with the description, "David Stebbins, 'better' known as Acerthorn online, just compounds his lying to the court";

- "The Dolt Acerthorn Strikes Again (Redux)[,]" with the description, "Acerthorn has decided to strike two of my streams for harassing him and doxing. Apparently, David's failures to actually get a case to succeed means his personal information that he submitted to the court can't be used against him. Or something."

---

[7] These videos (but not the Spectre Video at issue here) are available at: https://rumble.com/c/TheSpectreReport?e9s=src_v1_sa%2Csrc_v3_sa_o.

4

- "Acerthorn Is Now Admitting to Fraud";

- "Acerthorn: Sure I Lies [*sic*], It's Your Fault For Believing Me"; and

- "Acerthorn's Lolsuit [*sic*] against the Farms Hits Major Snag[,]" with the description, "Acerthorn's managed to eff himself and I was wondering why I could hear the rage gobbling."

On August 30, 2024, Mr. Stebbins submitted a Digital Millenium Copyright Act ("DMCA") takedown notice to Rumble, a holding company that owns the entity that operates rumble.com, regarding the Spectre Video. Mr. Stebbins alleged that the Spectre Video infringed his copyright in the Acerthorn Video, and that the Spectre Video "is not considered fair use." D.I. 2-1, at 6. In a good-faith effort to comply with its obligations under the DMCA's notice-and-takedown provision, 17 U.S.C § 512(c), Rumble removed the Spectre Video on September 1, 2024. Beall Decl. ¶ 5. As part of that process, Rumble did not determine whether the Spectre Video constituted fair use or protected political speech. *See id.* ¶ 6.

But Mr. Stebbins was not satisfied. On October 21, 2024, Mr. Stebbins sued Rumble and "John Doe d/b/a the Spect[re] Report" in this Court. On May 13, 2025, this Court dismissed the case *sua sponte* as against Rumble, since "the cause of action against Defendant Rumble is based on an indisputably meritless legal theory." *Stebbins v. Rumble Inc.*, 24-cv-1174, D.I. 11, at 2 (D. Del. May 13, 2025) (Noreika, J.). Separately, Mr. Stebbins petitioned this Court for, *inter alia*, a subpoena to Rumble under 17 U.S.C § 512(h), seeking the identity of the Spectre Report. D.I. 2, 19. Mr. Stebbins ostensibly seeks to "obtain the identity of an alleged infringer . . . for the purpose of protecting rights under" the copyright laws. D.I. 3, 19-11. The Court granted the petition, and the clerk issued the Subpoena against Rumble. D.I. 20, 21.

5

On March 5, 2026, Mr. Stebbins served Rumble's registered agent in Delaware with the Subpoena. Beall Decl. ¶ 3. The Subpoena sets a return date of February 14, 2026.[8] Rumble now moves to quash the Subpoena.

## ARGUMENT

### I.    THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT FAILS TO GIVE RUMBLE REASONABLE TIME TO COMPLY

"Rule 45(d)(3)(A)(i) states the issuing court must quash a subpoena that 'fails to allow a reasonable time to comply.'" *Verisign, Inc. v. XYZ.com, LLC*, 2015 WL 7960976, at *3 (D. Del. Dec. 4, 2015). Courts have held that "seven days" between service and the response date "is 'clearly unreasonable,'" *id.*, and regularly quash subpoenas providing for less time, *see, e.g.*, *Auteri v. Via Affiliates*, 2025 WL 1094251, at *1 (E.D. Pa. Apr. 11, 2025) ("less than one week"); *Lombardo v. Coslett*, 2013 WL 12406801, at *1 (M.D. Pa. Nov. 20, 2013) ("two compliance days"); *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, 2011 WL 5429005, at *8 (E.D. Pa. Nov. 7, 2011) ("three business and five calendar days").

Here, Mr. Stebbins served Rumble's registered agent on March 5, 2026, but set a return date of February 14, 2026—a Saturday, 19 days *before* service. Beall Decl. ¶ 3; Exhibit B. If seven days is not a reasonable time to comply, zero days (or negative 19 days) is certainly not. For this reason, the Subpoena should be quashed. In the alternative, the Subpoena should be modified to give Rumble 21 days—and in no event less than 14 days—to respond to the Subpoena from the resolution of this Motion. *See Grant Heilman*, 2011 WL 5429005, at *7 (noting that 14 days to respond to a subpoena is "presumptively reasonable").

---

[8] A copy of the Subpoena is attached hereto as Exhibit B.

## II.    THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT VIOLATES THE SPECTRE REPORT AND RUMBLE'S FIRST AMENDMENT RIGHTS

As is well-established, subpoenas issued under 17 U.S.C § 512(h) are invalid if they run afoul of the First Amendment.  The Spectre Video was speech on an issue of public concern, and the balance of harms favors protecting the Spectre Report's First Amendment right to anonymous speech and Rumble's right to curate and facilitate speech on its platform, including anonymous speech.  Therefore, the Court should quash the subpoena for improperly burdening the Spectre Report's and Rumble's First Amendment rights.  *See* Fed. R. Civ. P. 45(d)(3)(A)(iii).

### A.  Section 512(h) Subpoenas in Violation of the First Amendment Are Invalid.

A subpoena issued pursuant to the DMCA may "order [a] service provider . . . to expeditiously disclose to the copyright owner . . . information sufficient to identify the alleged infringer of [copyrighted] material," 17 U.S.C. § 512(h), but "[t]he First Amendment is implicated by civil subpoenas seeking the identi[t]y of anonymous individuals," *Raw Films, Ltd. v. John Does 1-15*, 2012 WL 1019067, at *6 (E.D. Pa. Mar. 26, 2012).  Therefore, "the First Amendment . . . can be raised in opposition to a DMCA subpoena," *Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1152 (N.D. Cal. 2013), and the Court must "consider[] the important value of anonymous speech balanced against a party's need for relevant discovery in a civil action," *In re Anonymous Online Speakers*, 661 F.3d 1168, 1176 (9th Cir. 2011).[9]

"[A]n author's decision to remain anonymous[] . . . is an aspect of the freedom of speech protected by the First Amendment."  *McIntyre*, 514 U.S. at 342; *see also Talley v. California*, 362

---

[9] Rumble has standing to object to a subpoena on the grounds that it infringes its users' First Amendment rights.  *See, e.g.*, *McVicker v. King*, 266 F.R.D. 92, 95–96 (W.D. Pa. 2010) (media company "clearly has third-party standing to assert the First Amendment rights of individuals anonymously posting to its . . . website"); *Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782, 786 (M.D. Pa. 2008) (similar).

U.S. 60, 64 (1960) (noting that "[a]nonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind").  The "right to engage in anonymous communication[] . . . extends to the Internet," *Raw Films*, 2012 WL 1019067, at *6 (citing *Reno v. ACLU*, 521 U.S. 844, 870 (1997)), because "the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism,'" *Anonymous Online Speakers*, 661 F.3d at 1173 (quoting *McIntyre*, 514 U.S. at 341–42).

### B.  The Spectre Video Involved Core Political Speech Meriting Heightened Protection.

"[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection."  *Snyder v. Phelps*, 562 U.S. 443, 452 (2011). Therefore, when a civil subpoena seeks to deanonymize a speaker, as the Subpoena does here, "the nature of the speech should be a driving force in choosing a standard by which to balance the rights of anonymous speakers," and "commercial speech should be afforded less protection than political, religious, or literary speech." *Anonymous Online Speakers*, 661 F.3d at 1177.  *Cf. Doe v. Cahill*, 884 A.2d 451, 457, 460, 462 (Del. 2005) (adopting high "summary judgment standard" for "unmask[ing] the identity of an anonymous defendant" in a defamation case "involving political criticism" and "political speech"  (emphasis omitted)).

In *Art of Living Foundation v. Does 1-10*, the Northern District of California adopted "a two-part test for determining whether to allow discovery seeking the identity of an anonymous defendant[]" in cases involving "a matter of public interest": "(1) The plaintiff must produce competent evidence supporting a finding of each fact that is essential to a given cause of action; and (2) if the plaintiff makes a sufficient evidentiary showing, the court must compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of the

8

plaintiff and by a ruling in favor of the defendant." 2011 WL 5444622, at *6–7 (N.D. Cal. Nov. 9, 2011). Other courts have applied the *Art of Living* test to subpoenas involving speech on matters of public concern, including DMCA subpoenas. *See, e.g.*, *Baugher v. GoDaddy.com LLC*, 2021 WL 4942658, at *3 (D. Ariz. Oct. 22, 2021) (DMCA subpoena); *Smythe v. Does*, 2016 WL 54125, at *2 (N.D. Cal. Jan. 5, 2016) (defamation and infliction of emotional distress); *Signature Mgmt. Team, LLC v. Doe*, 2015 WL 13036681, at *8 (E.D. Mich. Nov. 4, 2015) (copyright infringement); *Kechara House Buddhist Ass'n Malaysia v. Does*, 2015 WL 5538999, at *4 (N.D. Cal. Sept. 18, 2015) (defamation); *see also In re DMCA Subpoena to GoDaddy.com, LLC*, 2025 WL 3551922, at *7 (D. Md. Dec. 11, 2025) (noting applicability of *Art of Living* to DMCA subpoena but applying lower standard to "commercial" speech).

The Court should apply this test here, as this case involves speech on matters of public concern. "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community." *Snyder*, 562 U.S. at 453 (quotation marks omitted). "[D]iscussion of governmental affairs," *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 604 (1982), and "[t]he operations of the courts" are among such "matters of utmost public concern," *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978).

Here, the Acerthorn Video and the Spectre Video are undoubtedly speech on governmental affairs and the operations of the courts. In the Acerthorn Video, Mr. Stebbins discusses a particular case before the courts, including the Supreme Court, in great depth. He levies critique of the Supreme Court's approach to reviewing lower courts: "[t]he court of appeals is basically just given a free pass to do whatever they want with no accountability." Acerthorn Video at 14:08–14. Finally, Mr. Stebbins implores his viewers to make their views known by, *inter alia*, "going around

door to door, collecting signatures and getting matters placed on the ballot." *Id.* at 15:38–45.  This is paradigmatic political speech.

Per Mr. Stebbins, the Spectre Video, in turn, "[was] a full-length reaction, which means that [the Spectre Report] plays and reacts to the entire [Acerthorn Video], literally every single last second of it."  D.I. 2-1, at 6.  Although the video has been taken down, it is only reasonable to conclude that the Spectre Report's "reaction" to Mr. Stebbins's speech on a matter of public concern is necessarily also speech on a matter of public concern.  The back-and-forth between Mr. Stebbins and the Spectre Report falls within the "[f]ree and unhindered debate on matters of public importance" that the First Amendment protects.  *See Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 465 (3d Cir. 2015).[10]

**C.  The Balance of Harms Favors Quashing Mr. Stebbins's Subpoena.**

Even assuming Mr. Stebbins has "produce[d] competent evidence supporting" his claim of copyright infringement, the Court must still "compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of" each party.  *Art of Living*, 2011 WL 5444622, at *6–7.  Enforcing the Subpoena would cause significant, cognizable harm to the Spectre Report and Rumble.

*First*, "to the extent that [the Spectre Report's] anonymity facilitates free speech, the disclosure of his identity is itself an irreparable harm."  *Id.* at *9.  "Insofar as [the Spectre Report] may communicate his message more openly or garner a larger audience by employing a pseudonym, unveiling his true identity diminishes the free exchange of ideas guaranteed by the

---

[10] Because the Spectre Video was taken down, the exact content of the Spectre Video is not available, to the best of Rumble's knowledge.  Rumble's good-faith effort to honor Mr. Stebbins's DMCA takedown notice did not reflect, and should not be interpreted as, a decision that the Spectre Video is not political speech or does not constitute fair use.  *See* Beall Decl. ¶ 6.

Constitution." *Id.* This harm would not be limited to the Spectre Video: The Spectre Report has posted 51 other videos on rumble.com that are not alleged to infringe a copyright, and many of those other videos also discuss public issues, including litigation by Mr. Stebbins and others.[11] In one video, for example, the Spectre Report defended the U.S. Department of Defense against allegations that it made improper deductions from servicemembers' paychecks, an obvious issue of public concern.[12] Because the Spectre Report's allegedly infringing "speech occurred in the context of anonymous [posting] activities that are entitled to [First Amendment] protection[,] [a]n order unmasking [the Spectre Report] would therefore unmask him in connection with both protected and unprotected speech and might hinder his ability to engage in anonymous speech in the future." *Signature Mgmt. Team, LLC v. Doe*, 876 F.3d 831, 839 (6th Cir. 2017). The risk that unrelated speech with no connection to Mr. Stebbins would also be chilled weighs against deanonymizing the Spectre Report.

*Second*, while in the typical case an alleged infringer's "fear[] that that disclosure of their identit[y] will be misused is addressed . . . by the DMCA itself, which states the identities will only be used for the limited purpose of protecting the applicant's copyright," *Baugher*, 2021 WL 4942658, at *5, here there is reason to think Mr. Stebbins may have an ulterior motive for obtaining the Spectre Report's identity, despite his promise to the contrary, D.I. 3, 19-11. The Spectre Video formed part of a series of videos posted by the Spectre Report on rumble.com criticizing Mr. Stebbins's litigation tactics. *See supra* pp. 4–5. This criticism was unquestionably protected by the First Amendment, *see Snyder*, 562 U.S. at 458 (the First Amendment protects "insulting, and even outrageous, speech"), but the Spectre Report's longstanding criticism of Mr. Stebbins

---

[11] *See* https://rumble.com/c/TheSpectreReport?e9s=src_v1_sa%2Csrc_v4_sa_o.

[12] Available at https://rumble.com/v6m5dn0-dod-chow-hall-audit-is-bas-a-deduction.html?e9s=src_v1_sa%2Csrc_v3_sa_o%2Csrc_v1_ucp_a.

suggests that Mr. Stebbins may seek the Spectre Report's identity at least in part in order to chill that criticism. According to the Spectre Report, Mr. Stebbins previously reported "two of [the Spectre Report's] streams [to Rumble] for harassing him and doxing."[13] Though Rumble takes no position on any disputes between Mr. Stebbins and the Spectre Report, it is concerned that the disclosure of the Spectre Report's identity to Mr. Stebbins may facilitate the chilling of speech against which the First Amendment protects (and which free speech Rumble seeks to safeguard).

*Third*, enforcing the Subpoena would infringe on Rumble's First Amendment rights. "[S]ocial-media platforms are in the business, when curating their feeds, of combining multifarious voices to create a distinctive expressive offering." *Moody v. NetChoice, LLC*, 603 U.S. 707, 738 (2024) (quotation marks omitted). "The choice of material, [and] the decisions made [as to] content . . . constitute the exercise of editorial control and judgment" entitled to First Amendment protection. *Id.* (quotation marks omitted). Here, Rumble has made the editorial decision to permit its users to post on rumble.com anonymously, consistent with their own First Amendment rights. That decision reflects Rumble's commitment to the free and open exchange of ideas and opinions on the full spectrum of issues. Forcing the disclosure of the identities of Rumble's users may chill the speech not only of the user directly affected but also other users, who may thereafter opt not to post on rumble.com, affecting Rumble's ability to provide its chosen "distinctive expressive offering."

On the other hand, quashing the Subpoena would entail only minimal, if any, harm to Mr. Stebbins. The "core aim[]" of Section 512 is to "creat[e] a notice-and-takedown system enabling copyright owners to inform service providers about infringing material so that the provider can

---

[13] *See* https://rumble.com/v5d3z91-the-dolt-acerthorn-strikes-again.html?e9s=src_v1_sa%2Csrc_v3_sa_o%2Csrc_v1_ucp_a.

take it down." *In re Frontier Commc'ns Corp.*, 666 B.R. 260, 271 (Bankr. S.D.N.Y. 2025). Here, the Spectre Video has already been taken down—just two days after Mr. Stebbins notified Rumble—so there is no ongoing copyright infringement or market effect on the Acerthorn Video. Although DMCA subpoenas may provide recourse to copyright owners beyond the removal of an infringing post, the fact that the Spectre Video has already been taken down significantly reduces the potential harm to Mr. Stebbins.

Since Rumble's compliance with the Subpoena threatens significant harm to the Spectre Report and Rumble, and noncompliance "will not cause comparable injury to [Mr. Stebbins's] interests," the Court should quash the Subpoena. *See Art of Living*, 2011 WL 5444622, at *10.

## CONCLUSION

For the foregoing reasons, the Subpoena should be quashed.

Dated:  March 19, 2026                     Respectfully submitted,

**Of Counsel:**                            /s/ *Theodore A. Kittila*
                                           Theodore A. Kittila (Bar No. 3963)
Gregory J. Dubinsky*                       **HALLORAN FARKAS + KITTILA LLP**
Nicholas H. Hallock*                       5722 Kennett Pike
**HOLWELL SHUSTER**                        Wilmington, Delaware 19807
**& GOLDBERG LLP**                         Phone:  (302) 257-2025
425 Lexington Avenue                       Email:  tk@hfk.law
14th Floor
New York, New York 10017                   *Attorneys for Rumble Inc.*
Phone:  (646) 837-5151
Email: gdubinsky@hsgllp.com
       nhallock@hsgllp.com

* Motion *pro hac vice* forthcoming

13