UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

DAVID STEBBINS                                        PETITIONER

VS.                         Case 1:24-mc-478-MN

GOOGLE LLC AND RUMBLE INC.                            RESPONDENTS

### BRIEF IN OPPOSITION TO ECF 30, MOTION TO QUASH

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Brief in Opposition to Respondent Rumble Inc ("Movant," "Rumble," or "Respondent")'s Motion to Quash Subpoena.

**Rumble's first ground for quash is procedurally improper and otherwise meritless.**

1.      Rumble's first ground for quash is that the subpoena does not give them enough time to comply. In support of this claim, they point to the fact that the subpoena lists February 14, 2026 as a deadline, which predates their receipt of the subpoena.

2.      First of all, it is the Court's fault, not mine, that the deadline for subpoena predates their service thereof. Had the Court granted the petition immediately after the US Court of Appeals for the Third Circuit issued its mandate vacating this Court's previous order (ECF 18), then it would have reached Respondent with plenty of time to spare. I should not be punished because of the Court's failure to act swiftly.

3.      Barring that, total quashing is unnecessary because any prejudice Movant may or may not have suffered can be cured through the simple expedient of requesting an extension of time to comply.

4.      However, to the extent the Court may construe their motion to quash as a motion for extension of time to comply, and be inclined to grant said extension, said motion is still procedurally premature. When a party seeks an extension of time to respond to something, it is black letter law that they must first reach out to the opposing party and make a reasonable attempt to obtain that party's consent to the extension before they move the Court to grant it.

5.      Here, I have received no correspondence from Respondent to that effect, and Respondent makes no mention anywhere in their Motion or Brief that suggests they've sent any such correspondence. Therefore, to the extent the Court feels that any prejudice to Respondent can be cured simply by granting them an extension of time to respond, the Court should deny that extension without prejudice.

-1-

**Spectre's reaction video was not political, and Respondent's attempts to suggest otherwise are speculative at best, out and out lying at worst.**

6.      In an attempt to bolster their weak ground for quash in a way that can't be cured through a simple extension of time, Movant attempts to invoke the heightened protections of the First Amendment as applied to political speech, claiming that, because my original video which Spectre infringed upon contained nominal political speech, "it is only reasonable to conclude that the Spectre Report's 'reaction' to Mr. Stebbins's speech on a matter of public concern is necessarily also speech on a matter of public concern." ECF 31 at 14.

7.      But notice exactly what they're saying, here. They are not claiming, with utmost confidence, that Spectre's reaction contained political speech. They certainly don't point to any specific points in his reaction (like they do with my original video) where he actually makes a political statement. Instead, they are merely saying that it has a greater-than-astronomical chance that it contains political speech. They are attempting to quash the subpoena with prejudice (and therefore effectively strip me of my ability to have my day in court against Spectre in its entirety) solely on the ***possibility*** that it ***might*** qualify for the "political speech" heightened protection under the First Amendment, while offering precisely zero evidence that it does in fact so qualify.

8.      I shouldn't even have to explain how that's frivolous. Since when has it been legally prudent to do something that would have the effect of shutting the Plaintiff out of court entirely (such as, but not limited to, quashing a subpoena or granting a motion to dismiss) simply on the *possibility* that a defense *might* apply? Since when has that ever been a valid grounds? What's next? Will the Defendant himself file a motion to dismiss the case, solely on the *possibility* that his reaction might be fair use? Not that it undoubtedly is fair use, just the possibility that it might be, and that alone is grounds to strip me of my day in court.

9.      Respondent's entire case for saying that Spectre's reaction was political seems to be based on their conclusion that my original video was likewise political.

10.      But even that is a stretch in the best case scenario. First of all, why don't they know for a fact if Spectre himself made any political statements while reacting to my video? What, do they not have an archive of the video for their own records for an occasion just like this? If so, that sounds like an act of negligence on their part in and of itself.

11.      Second, it's a stretch in the best case scenario to suggest that my original video was, as a whole, political. The original video was 18 minutes and 50 seconds (or 1,130 seconds) long. Respondent identified only two sections of that video – totaling 170 seconds in length – that they qualify as "political speech." That means that only 15% of the video's total runtime was even arguably based on political speech. So to say that the video as a whole was political speech is a stretch to put it mildly.

-2-

12.     At that point, if any work contains any statements in it that could arguably be classified as political, the entire work would suddenly become political, and suffer reduced copyright protection accordingly. For example, any books or movies with strong female protagonists would suffer reduced copyright protection because their "clearly feminist agenda" is considered political speech. Such a precedent wold do far more to chill the free creation of expression that copyright law was designed to encourage than forcing ISPs to "de-anonymize" (as Respondent puts it) its most vile and toxic users pursuant to legal process ever would.

13.     In fact, it would probably affect nearly every piece of art in existence. As this YouTube creator explains in these videos … https://www.youtube.com/watch?v=hAxXqJVtuh4 … https://www.youtube.com/watch?v=NR5yW38aCkg … https://www.youtube.com/watch?v=BZWH6wMOuDU … and plenty more where that came from, nearly all art has political messages in it, no matter how much the creators may try to abstain from "making any political statements." In fact, you can even subconsciously create political speech without trying to! As that same creator explains in this video ... https://www.youtube.com/watch?v=hAxXqJVtuh4 ... political allegory can almost always be found by viewers even when the work of art takes place in an entirely fantasy world.

14.     These may be subtle metaphors, but according to Respondent, that doesn't matter. As long as eve a nominal amount of political speech can be found in a work, then, according to Movant, that alone makes *the entire work* political in nature for purposes of reduced copyright protection.

15.     Bear in mind that, since Respondent does not point to any specific points in Spectre's reaction that amount to political statements, their sole basis for claiming that Spectre's video was political speech is because they classify the original video, as a whole, as political speech. Also bear in mind that Respondent's entire ground for quash that cannot be cured by simple extension of time was that Spectre's reaction "Involved Core Political Speech Meriting Heightened Protection."

16.     This means that, if they cannot prove that Spectre's reaction is "core political speech," their entire grounds for quash crumbles at the foundation, and since they cannot point to any specific political statements Spectre made in that reaction, that means that, if they cannot justify my original video in its entirety as "core political speech," their already thinly-veiled attempts to have Spectre's reaction classified as equally political (already entirely speculative, for reasons outlined above) likewise crumbles at the foundation.

17.     For all of these reasons and more, Respondent's second and final ground for quash is frivolous.

**The balance of equities weighs in favor of denying the motion to quash.**

18.     Respondent insists that the balancing of equities weighs in favor of quashing, but that is

-3-

false. While reviewing the next few sections, the Court is respectfully reminded of two things:

19.    First, this Court has already found that it lacks jurisdiction to hear and decide the related copyright infringement & defamation lawsuit against Spectre, meaning that, while considering this motion to quash, it must (subject to one possible exception, explained below) abstain from making any finding that would have the effect of deciding the merits of the related case or any portion thereof.

20.    Second, the Court is respectfully reminded that there is a third group whose equities need to be considered in the balance that Respondent failed to mention: The interests of society as a whole.

<u>My right to be free from defamation, and my right to enforce my copyright from unfair infringement, both supersede Spectre's and Respondent's First Amendment rights.</u>

21.    Respondent asserts First Amendment rights, but those rights are not absolute. As for copyright infringement, the mere fact that the statute of 17 USC § 512(h) exists at all shows that Congress prioritizes the rights of copyright holders over the rights of putative infringers to remain anonymous. So unless Respondent wants to argue that § 512(h) in its entirety is unconstitutional (which they are not currently doing), the Rule of Law compels the Court to enforce the subpoena.

22.    As for slander, this is another instance where Spectre's rights to free speech (and, by extension, Respondent's supposed right to refuse to disclose Spectre's identity) yields as a matter of public policy to my right to be free from defamation. "False statements of fact are particularly valueless; they interfere with the truth-seeking function of the marketplace of ideas, and they cause damage to an individual's reputation that cannot easily be repaired by counterspeech, however persuasive or effective." See Hustler Magazine, Inc. v. Falwell, 485 US 46, 52 (1988).

23.    Therefore, I still have the right to have my day in court against Spectre, which in turn means that Respondent has a duty to tell me who he is.

<u>Respondent's allegation that I am seeking to silence criticism is speculative at best and is based solely on Spectre's behavior, rather than my own.</u>

24.    Respondent next alleges that I am acting, at least in part, to silence criticism of me rather than enforce my legal rights.

25.    First of all, even if this is true, it doesn't matter. See Leval, P. N. (1990). Toward a fair use standard. Harvard Law Review, 103(5), 1105–1136, 1128:

"The secondary user may contend that the copyright holder is disingenuously

invoking copyright remedies as a device to suppress criticism or protect secrecy. Such considerations are also false leads. Like a proprietor of land or an owner of contract rights, the copyright owner may sue to protect what he owns, regardless of his motivation."

26. Second, even if it were a relevant objection, Respondent provides zero evidence in support of this position. Their entire evidence that I might be trying to silence criticism is based entirely around what Spectre has done, not anything I allegedly said or did. See ECF 31, pp. 15-16 ("the Spectre Report's longstanding criticism of Mr. Stebbins suggests that Mr. Stebbins may seek the Spectre Report's identity at least in part in order to chill that criticism").

27. If the Court were to side with Rumble on this issue, it would effectively put the ball exclusively in the tortfeasors' court. As long as they do enough so-called "criticism," they become effectively immune from suit, because at that point, nothing – not even legal process – can compel ISPs to tell plaintiffs who they are so they can seek justice against them. They would then be empowered to infringe on copyright, invade people's privacy, revenge porn their victims, publish horrible lies falsely accusing people of deplorable behavior knowing he has zero evidence to back those accusations up, and many other horrifying behaviors, simply because his victims would have no way of holding him accountable. Such a result is ludicrous on its face.

<u>Rumble has no First Amendment right to keep its posters anonymous.</u>

28. Next, Respondent insists that it is *their* First Amendment rights, not simply Spectre's, which are at stake in this matter. Specifically, they appear (although they don't claim it unambiguously) to be invoking the "compelled speech" subset of First Amendment protection. Specifically, Rumble claims that it "has made the editorial decision to permit its users to post on rumble.com anonymously." See ECF 31, p. 16.

29. However, Rumble does not have the right to not follow the law. 17 USC § 512(h) expressly authorizes these subpoenas to issue, so unless Rumble is claiming that the subsection is all the way unconstitutional (which they are not currently doing).

30. For the Court to hold that Rumble is within its First Amendment rights to not comply with this subpoena, it would have to, in effect, declare that ALL Internet service providers purportedly covered under the statute have the unilateral and nonreviewable right to simply opt out of following it, simply because that ISP, in its arbitrary discretion, has likewise "made the editorial decision" that they don't want to follow it. I shouldn't even have to explain how that is a patently frivolous assertion. "Government could exist only in name under such circumstances." See Reynolds v. United States, 98 US 145, 167 (1879) (referencing a similar First Amendment right, where the only way to accommodate that right was to grant the defendant a blanket exemption from the law, and finding that to be an absurd proposition).

31.     Put simply, while "compelled speech" has its place in First Amendment jurisprudence, it is long-established, black letter law that subpoenas are an exception to it, and the Court should not disturb this long-settled principle of law.

Respondent just admitted they qualify as nominal publishers, thereby opening themselves up to vicarious liability despite the protections of § 230.

32.     If Respondent wishes to double down and insist that it has the First Amendment right to not comply with the subpoena, there may be another way I can have justice in this action: By forcing Rumble to be vicariously liable for the content posted by Spectre.

33.     When insisting that Rumble itself (not just Spectre) has First Amendment rights to assert, Respondent outright called its position an "editorial decision." This means that, by their own admission, they are a publisher (or at least co-publisher) of the content which forms the basis of my copyright and defamation claims.

34.     In the related case, the Court dismissed Rumble as a co-defendant, even though I alleged that they qualify as a publisher by dint of the recent precedent of Anderson v. TikTok, Inc., 116 F. 4th 180 (3rd Cir. 2024), because the Court found my allegations that Rumble had made sufficient editorial contributions to be "speculative." But it's not speculative anymore. Now, the fact that Rumble has made editorial contributions towards Spectre's infringement and slander is proven by Rumble's own admission. They outright call their policy an "editorial decision" to protect tortfeasors who use their platform to spread tortuous content.

35.     Therefore, the Court should (A) re-open the related case, (B) vacate its previous decision, (C) reinstate Rumble as a co-defendant, and (D) allow the related case to proceed in this district, now that the Court has general personal jurisdiction over at least one defendant.

36.     Of course, Rumble is still going to have to disclose Spectre's identity anyway, since he still needs to be served with process all the same. This also means that Rumble will be vicariously liable even for the copyright infringement, despite the fact that they removed the stream pursuant to my DMCA Takedown.

Granting the motion to quash would effectively deprive me of my day in court altogether.

37.     Respondent insists that the "balance of equities" weighs in favor of quashing. However, to quash would have the effect of denying me my day in court against Spectre in its entirety. Unless co-respondent Google LLC chooses to reveal his identity, I will have no way of serving process on him. So unless the Court does what I suggest in ¶ 35 above, I will have no way of seeking compensation for the harm done to me.

38.     Speaking of which, Respondent claims that I have only a minimal interest to enforce.

However, that is a direct statement on the merits of the case between me and Spectre, and as I explained in ¶ 19 above, this Court lacks jurisdiction to decide anything related to the merits of the related case unless it chooses to re-open the related case pursuant to ¶ 35 above.

### Even with the video having been taken down, I still have a vested, significant interest in enforcing this copyright.

39.    Even if the Court decides that the removal of the stream weighs in favor of quashing (something it can only decide if it has jurisdiction over the related case), that alone does not mean that I have only a nominal interest weighing in my favor in the galance of equities.

40.    Even if we forego the slander interest, and focus exclusively on the copyright infringement, lest we forget that (A) I am entitled to recover statutory damages in the related case and (B) there were six different copyrighted songs at issue in the related case. This means that statutory damages cannot go any lower than $4,500, even if the judge wanted to. Meanwhile, statutory damages can be as high as $900,000.

41.    This raises the question: In what reality is "just shy of a million bucks" even remotely a nominal interest?

42.    But even if we ignore the statutory damages entirely, I still have a significant interest in bringing this copyright infringement claim as a matter of principle: Because this practice is far too common and it needs to be stamped out.

43.    What do I mean by that? Well, at this time, I would like to turn this Court's attention to a concurrent case I am prosecuting over in California. Specifically, I am referring to Case 3:24-cv-00398-RFL (Stebbins v. Garcia Baz). Specifically, look at the "Memorandum (aka Brief) in Support of Motion for Default Judgment" (Dkt. 37-9), ¶¶ 50-56.

44.    As you can see from that excerpt, as well as Dkt. 37-4 (Exhibit D to the motion for default judgment, which is referenced during that section of the memorandum), this brand of infringement – full-length reactions where the reactor watches the entire video for the first time, copying literally every single last second of the original video – are extremely common despite being objectively weak cases for fair use. Meanwhile, as I demonstrate in that excerpt, the prominence of this brand of infringement is matched only by the sheer arrogance and entitlement of those who perpetrate it.

45.    In the 9th Circuit (where California is), the Model Civil Jury Instructions encourage juries to consider "the need to deter further infringement" when assessing statutory damages. That alone gives me an interest in pursuing this copyright action against Spectre, even if my compensatory damages are literally zero, which causes the balance of equities to weigh in my favor.

**Conclusion**

46.    For all of these reasons and more, the Court should deny the Motion to Quash.

47.    Wherefore, premises considered, I respectfully pray that the Motion to Quash be denied, that Rumble be ordered to comply with the subpoena, that costs incurred be awarded, and for any other relief to which I may be entitled.

So requested on this, the 22nd day of March, 2026.

/s/ David Stebbins
David Stebbins (pro se)
123 W. Ridge Ave.,
Apt. D
Harrison, AR 72601
870-204-6516
acerthorn@yahoo.com

-8-