# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| DAVID STEBBINS,<br><br>             *Plaintiff*,<br><br>   v.<br><br>GOOGLE LLC and RUMBLE INC.,<br><br>             *Defendants*. | | Case No. 1:24-mc-00478-MN |

## RUMBLE INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO QUASH

**Of Counsel:**

Gregory J. Dubinsky*
Nicholas H. Hallock*
**HOLWELL SHUSTER
& GOLDBERG LLP**
425 Lexington Avenue
14th Floor
New York, New York 10017
Phone: (646) 837-5151
Email: gdubinsky@hsgllp.com
      nhallock@hsgllp.com

March 30, 2026

* Admitted *pro hac vice*

**HALLORAN FARKAS + KITTILA LLP**

Theodore A. Kittila (Bar No. 3963)
5722 Kennett Pike
Wilmington, Delaware 19807
Phone: (302) 257-2011
Email: tk@hfk.law

*Attorneys for Rumble Inc.*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT .............................................................................................................................1

    I.   RUMBLE'S MOTION IS PROCEDURALLY PROPER....................................................1

    II.  THE SUBPOENA SHOULD BE QUASHED .................................................................2

        A.  The Acerthorn and Spectre Videos Constitute Speech on Matters of
Public Concern.......................................................................................................2

        B.  The Balance of Harms Favors Quashing the Subpoena................................................4

    III. MR. STEBBINS'S ACCUSATIONS AGAINST RUMBLE ARE BASELESS ................6

CONCLUSION...........................................................................................................................7

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Anderson v. TikTok, Inc.*,
   116 F.4th 180 (3d Cir. 2024) ........................................................................................ 6

*Art of Living Foundation v. Does 1-10*,
   2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) .......................................................... 2, 5

*Baugher v. GoDaddy.com LLC*,
   2021 WL 4942658 (D. Ariz. Oct. 22, 2021)................................................................ 4

*DiMeo v. Max*,
   433 F. Supp. 2d 523 (E.D. Pa. 2006),
   *aff'd*, 248 F. App'x 280 (3d Cir. 2007)...................................................................... 6

*Garrett v. City Univ. of New York*,
   2025 WL 3096550 (S.D.N.Y. Oct. 10, 2025)............................................................. 3

*Housemaster SPV LLC v. Burke*,
   2022 WL 17904254 (D.N.J. Dec. 23, 2022)............................................................ 1-2

*In re DMCA Subpoena to GoDaddy.com, LLC*,
   2025 WL 3551922 (D. Md. Dec. 11, 2025)................................................................ 4

*Landmark Commc'ns, Inc. v. Virginia*,
   435 U.S. 829 (1978)...................................................................................................... 3

*Malibu Media, LLC v. John Does 1-16*,
   2012 WL 1681819 (D.D.C. Apr. 11, 2012)................................................................ 4

*McIntyre v. Ohio Elections Comm'n*,
   514 U.S. 334 (1995)...................................................................................................... 2

*Moody v. NetChoice, LLC*,
   603 U.S. 707 (2024)...................................................................................................... 5

*Stebbins v. Google LLC*,
   2023 WL 6139454 (N.D. Cal. Aug. 31, 2023),
   *appeal filed*, No. 24-1936 (9th Cir.) ......................................................................... 5

*Stebbins v. Stebbins*,
   2013 WL 6182991 (W.D. Ark. Nov. 26, 2013),
   *aff'd*, 575 F. App'x 705 (8th Cir. 2014)..................................................................... 5

*UMB Bank, N.A. v. Sanofi*,
   2017 WL 3738457 (S.D.N.Y. Aug. 10, 2017).......................................................... 1

*Watts v. United States*,
   394 U.S. 705 (1969)...................................................................................................... 3

**Statutes**

17 U.S.C § 512............................................................................................................... 1, 4

**Rules**

Fed. R. Civ. P. 4 ..................................................................................................... 7

Fed. R. Civ. P. 45 ............................................................................................. 1, 2, 4

**Other Authorities**

Matthew Sag, *Internet Safe Harbors and the Transformation of Copyright Law*,
    93 Notre Dame L. Rev. 499 (2017) ...................................................................... 3

Rumble, *Website Terms and Conditions of Use and Agency Agreement* ...................................... 7

U.S. Copyright Office, *The Digital Millennium Copyright Act* ........................................................ 3

**PRELIMINARY STATEMENT**

Mr. Stebbins's opposition brief fails to refute Rumble's arguments. Moreover, the opposition lends strength to the concern that Mr. Stebbins seeks to use the DMCA to bring non-copyright causes of action, in violation of 17 U.S.C. § 512(h)(2)(C), and thereby chill the Spectre Report's First Amendment rights.

Mr. Stebbins also asserts that Rumble's commonplace and well-known decision to permit its users to post anonymously renders it liable for all of its users' violations of the law. This argument is meritless and at plain odds with governing law. If accepted, it would impose enormous (and legally incorrect) liability on nearly every website that allows third-party posts.

The Court should quash the Subpoena.

**ARGUMENT**

**I.    RUMBLE'S MOTION IS PROCEDURALLY PROPER**

As an initial matter, Mr. Stebbins' procedural objections to Rumble's Motion to Quash are misplaced. Mr. Stebbins is incorrect that "it is the Court's fault . . . that the deadline [to respond to the] subpoena predates the[] service thereof." D.I. 35 ("Opp.") ¶ 2. The Court issued the Subpoena on February 4, ten days before its due date, D.I. 21, but Mr. Stebbins did not serve Rumble until March 5, D.I. 31-1 ¶ 3. In any event, Mr. Stebbins's delay is certainly not Rumble's fault, and cannot justify giving Rumble zero days to comply with the Subpoena.

Mr. Stebbins is also incorrect that Rumble's alternative request to modify the Subpoena is "procedurally premature." Opp. ¶ 4; *see* D.I. 31 ("Motion" or "Mot.") at 6 (requesting modification in the alternative). Contrary to Mr. Stebbins's suggestion that Rumble should have first sought his consent, Opp. ¶¶ 4–5, "[t]he plain language of Rule 45 does not require that the parties (and non-parties) meet and confer prior to the filing of a motion," *UMB Bank, N.A. v. Sanofi*, 2017 WL 3738457, at *2 n.1 (S.D.N.Y. Aug. 10, 2017); *see Housemaster SPV LLC v.*

*Burke*, 2022 WL 17904254, at *7 (D.N.J. Dec. 23, 2022) ("the courts have dispensed with requiring [parties] to meet and confer prior to filing a motion under Rule 45").  Mr. Stebbins identifies no authority to the contrary.

## II.      THE SUBPOENA SHOULD BE QUASHED

The First Amendment right to anonymous speech, especially on matters of public concern, is enshrined in our constitutional order.  *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995).  In assessing the propriety of Mr. Stebbins's subpoena seeking to unmask the identity of one of his critics, a "compar[ison] [of] the magnitude of the harms that would be caused to" the Spectre Report, Rumble, and Mr. Stebbins makes clear that Rumble's motion to quash should be granted.  *See Art of Living Foundation v. Does 1-10*, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

### A.  The Acerthorn and Spectre Videos Constitute Speech on Matters of Public Concern.

Mr. Stebbins contends that the Spectre Report's video was not speech on matters of public concern, and seemingly also denies that the Acerthorn Video constituted speech on matters of public concern, apparently because the speech Rumble identified was only "170 seconds in length."  Opp. ¶ 11.  Both videos are properly deemed speech on matters of public concern, and thus the Spectre Report's anonymity warrants heightened protection.

Consider first the Acerthorn Video.  Mr. Stebbins argues that Rumble "identified only two sections of [his] video" that "qualify as 'political speech.'"  *Id.*  But that is wrong: The Motion explained that the entire Acerthorn Video (1) "discuss[ed] a petition for writ of certiorari . . . which was then pending before the Supreme Court," (2) criticized the Supreme Court's process for granting certiorari, and (3) concluded with "an extended discussion of government corruption and a call to action to Mr. Stebbins's viewers[.]"  Mot. at 3.  This is quintessential political speech.  It

2

is of no import that Rumble quoted only a portion of the Acerthorn Video. The referenced portions—in fact, the entire video—constituted "speech on governmental affairs and the operations of the courts," which the Supreme Court has made clear are "'matters of utmost public concern'" entitled to heightened First Amendment protection. *Id.* at 9–10 (quoting *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978)). That is not true of "nearly every piece of art in existence." Opp. ¶ 13.

As Rumble explained, it is reasonable to conclude that the Spectre Video—a "reaction" to the Acerthorn Video (D.I. 2-1, at 6)—was also speech on matters of public concern. The URL for the Spectre Video appears to label it a "commentary" and "critique" of the Acerthorn Video. D.I. 19-6. The Spectre Video's "commentary" on and "critique" of the Acerthorn Video—which itself discusses matters of public concern—is reasonably deemed to also constitute speech on a matter of public concern. *See Garrett v. City Univ. of New York*, 2025 WL 3096550, at *14 (S.D.N.Y. Oct. 10, 2025) ("the First Amendment provides speakers with latitude to criticize others . . . in the context of a genuine public debate"). Nor did the Spectre Video's commentary need to rise to the level of the Athenian agora to warrant constitutional protection: "The language of the political arena" nearly always merits First Amendment protection even if it happens to be "vituperative, abusive, [or] inexact." *See Watts v. United States*, 394 U.S. 705, 708 (1969).[1]

---

[1] Mr. Stebbins's suggestion that Rumble was "negligen[t]" in failing to create "an archive of the video for their own records" is entirely meritless. Opp. ¶ 10. Section 512's notice-and-takedown provision serves to "enable[] copyright owners to have infringing online content removed *without* the need for litigation." U.S. Copyright Office, *The Digital Millennium Copyright Act* (emphasis added), *available at* https://www.copyright.gov/dmca/; *see* Matthew Sag, *Internet Safe Harbors and the Transformation of Copyright Law*, 93 Notre Dame L. Rev. 499, 503 (2017) ("[A]lthough millions of online videos are targeted for removal under notice-and-takedown, individual [users] have rarely been subject to follow-up litigation."). Therefore, receipt of a DMCA takedown notice does not render litigation reasonably foreseeable and accordingly does not create a duty to preserve. Rumble is not aware of any case holding otherwise.

### B. The Balance of Harms Favors Quashing the Subpoena.

Mr. Stebbins also argues that the balance of harms favors enforcing the Subpoena. But his attempt to downplay the likely harm to the Spectre Report and Rumble is unavailing.

*First*, Mr. Stebbins identifies his "right to be free of defamation" as favoring enforcement, Opp. ¶ 22, but his invocation of a potential defamation claim against the Spectre Report cuts against him. A prerequisite to the issue of a DMCA subpoena is "a sworn declaration" that information obtained through the subpoena "*will only be used for the purpose of protecting rights under this title*"—*i.e.*, rights under the federal copyright laws. 17 U.S.C. § 512(h)(2)(C) (emphasis added); *see Malibu Media, LLC v. John Does 1-16*, 2012 WL 1681819, at *2 (D.D.C. Apr. 11, 2012) (a DMCA "[p]laintiff may only use the information disclosed in response to a Rule 45 subpoena served on an ISP for the purpose of protecting and enforcing [p]laintiff's [copy]right"). This restriction reduces Section 512(h)'s potential conflict with the First Amendment by assuaging anonymous speakers' reasonable "fears that that disclosure of their identities will be misused." *Baugher v. GoDaddy.com LLC*, 2021 WL 4942658, at *5 (D. Ariz. Oct. 22, 2021).[2] Mr. Stebbins twice made such a declaration, D.I. 3, 19-11, but now he says he plans to enforce his "right to be free from defamation" as well. Thus, Mr. Stebbins has admitted he has a motive for the subpoena that is at odds with Section 512(h).

*Second*, Rumble's concern that Mr. Stebbins may seek "to silence criticism" does not rest on "zero evidence." Opp. ¶¶ 24, 26. As noted, Mr. Stebbins has apparently walked back his sworn declaration that he will use the Spectre Report's identity only for copyright-enforcement purposes. Furthermore, Mr. Stebbins has a pattern of abusive litigation. He is a serial litigant who "has filed

---

[2] The "fact that the statute of 17 [U.S.C.] § 512(h) exists at all" does not mean that the First Amendment has no role to play in the context of speech on matters of public concern, as many courts have recognized. Opp. ¶ 21; *see, e.g., Baugher*, 2021 WL 4942658, at *2–3; *In re DMCA Subpoena to GoDaddy.com, LLC*, 2025 WL 3551922, at *4–5 (D. Md. Dec. 11, 2025).

over 50 lawsuits in federal court." Mot. at 2. According to the courts adjudicating these lawsuits, Mr. Stebbins "has brought copyright claims of little merit against his critics, whom he considers harassing him online," which "is not a proper use of copyright law." *Stebbins v. Google LLC*, 2023 WL 6139454, at \*10 (N.D. Cal. Aug. 31, 2023), *appeal filed*, No. 24-1936 (9th Cir.); *see also Stebbins v. Stebbins*, 2013 WL 6182991, at \*1 (W.D. Ark. Nov. 26, 2013) (sanctioning Mr. Stebbins for his "history of unsubstantial and vexatious litigation"), *aff'd*, 575 F. App'x 705 (8th Cir. 2014). Although Rumble takes no position on any dispute between Mr. Stebbins and the Spectre Report, this case appears to fit the pattern.

*Third*, Rumble's own First Amendment rights are relevant. Rumble chooses to permit its users to post anonymously, and enforcement of the Subpoena would require Rumble to deanonymize the Spectre Report. Mot. at 12; *see Moody v. NetChoice, LLC*, 603 U.S. 707, 738 (2024) (noting social media platforms' First Amendment right to make "expressive choices"). Rumble does not request a "unilateral and nonreviewable right to simply opt out of following" DMCA subpoenas. Opp ¶ 30. Rumble merely requests that its rights should count among the "competing interests" weighed by the Court. *See Art of Living*, 2011 WL 5444622, at \*7.

*Finally*, whatever burden granting Rumble's Motion may visit on Mr. Stebbins is less severe than he suggests. Rumble took the Spectre Video down over 18 months ago, so "there is no ongoing copyright infringement or market effect on the Acerthorn Video." Mot. at 13. And Mr. Stebbins's attempt to quantify his claim contradicts his DMCA notice. There, Mr. Stebbins argued that a particular "video" (the Spectre Video) "infringes on" his "copyrighted video" (the Acerthorn Video), because the Spectre Report allegedly "copied the entirety of [Mr. Stebbins's] original video." D.I. 19-6. Now Mr. Stebbins argues that his is entitled to damages "as high as

5

$900,000" because "there were six different copyrighted songs at issue"—but nowhere explains what these songs are, or what they have to do with the Spectre Report. Opp. ¶ 40.

*       *       *

Because the Spectre Video constitutes political speech and the balance of harms favors the Spectre Report's and Rumble's rights, the Court should quash the Subpoena.

### III.    MR. STEBBINS'S ACCUSATIONS AGAINST RUMBLE ARE BASELESS

Not content to respond to Rumble's Motion, Mr. Stebbins accuses *Rumble* of "[copyright] infringement and slander," on the theory that Rumble's decision to permit its users to post anonymously renders it "a publisher (or at least co-publisher) of the content which forms the basis of [Mr. Stebbins's] copyright and defamation claims." Opp. ¶¶ 33, 34. This argument misrepresents both Rumble's prior statements and the law, and the Court should reject it out of hand.

Rumble indeed "made the editorial decision to permit its users to post on rumble.com anonymously." Mot. at 12. But that decision does not render Rumble a "publisher" or "co-publisher" of the contents of third parties' posts on its site. *See, e.g.*, *DiMeo v. Max*, 433 F. Supp. 2d 523, 524, 530 (E.D. Pa. 2006) (operator of "message boards that allow Internet users to post anonymous comments on different topics" is not liable for users' defamatory statements since he "did not create the anonymous posts"), *aff'd*, 248 F. App'x 280 (3d Cir. 2007). *Anderson v. TikTok, Inc.*, which Mr. Stebbins cites, is not to the contrary. Opp. ¶ 34 (citing 116 F.4th 180 (3d Cir. 2024)). In *Anderson*, the Third Circuit explained that an online service provider can be liable as a publisher when "the information that forms the basis of [a] lawsuit . . . is [its] own expressive activity." *Id.* at 184. That is not the case here. Rumble's expressive activity was its decision to allow the Spectre Report to post anonymously, but the bases of Mr. Stebbins's prospective lawsuit against the Spectre Report are (1) the Spectre Report's allegedly infringing use of Mr. Stebbins's

6

copyright and (2) the Spectre Report's alleged defamation of Mr. Stebbins. Rumble had nothing to do with either, and Mr. Stebbins presents no facts suggesting otherwise.[3]

A contrary holding would have startling consequences. Rumble's decision to allow third parties to post anonymously is hardly unique: Numerous other online service providers have made the same editorial choice, from social media platforms like YouTube and X to news websites with comment sections like the New York Times. Under Mr. Stebbins's theory, an online service provider's decision to allow its users to post anonymously would suddenly render it legally responsible for *all* of its users' content. Third Circuit caselaw does not support this result, and common sense prohibits it.[4]

## CONCLUSION

The Court should quash the Subpoena.

---

[3] In fact, Rumble *prohibits* copyright infringement and defamation. *See* Rumble, *Website Terms and Conditions of Use and Agency Agreement* (prohibiting, *inter alia*, (1) the posting of "[c]ontent or material [that is] subject to copyright by another person" absent authorization or fair use, and (2) the "disseminat[ion of] personal information" for the purpose of "defamation"), *available at* https://rumble.com/s/terms.

[4] Mr. Stebbins also asks the Court to "re-open the related case" (1:24-cv-01174) Mr. Stebbins brought against Rumble. Opp. ¶ 35. To the best of Rumble's knowledge, Mr. Stebbins did not properly serve Rumble in that action. *See* Beall Decl. ¶¶ 3–4; *see also* Fed. R. Civ. P. 4(m) (requiring service within 90 days of filing a complaint). On the merits, Mr. Stebbins's arguments fail for the reasons discussed *supra*.

Dated:  March 30, 2026

**Of Counsel:**

Gregory J. Dubinsky*
Nicholas H. Hallock*
**HOLWELL SHUSTER
& GOLDBERG LLP**
425 Lexington Avenue
14th Floor
New York, New York 10017
Phone:  (646) 837-5151
Email: gdubinsky@hsgllp.com
        nhallock@hsgllp.com

\* Admitted *pro hac vice*

Respectfully submitted,

/s/ *Theodore A. Kittila*
Theodore A. Kittila (Bar No. 3963)
**HALLORAN FARKAS + KITTILA LLP**
5722 Kennett Pike
Wilmington, Delaware 19807
Phone:  (302) 257-2025
Email:  tk@hfk.law

*Attorneys for Rumble Inc.*

8