UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

DAVID STEBBINS                                              PETITIONER

VS.                          Case 1:24-mc-478-MN

GOOGLE LLC AND RUMBLE INC.                          RESPONDENTS

## RESPONSE IN OPPOSITION TO MOTION TO QUASH

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Response in Opposition to Motion to Quash in the above-styled action.

1.      The contents, statements, and arguments contained in ECF 35 (Brief in Opposition to Rumble's Motion to Quash) are hereby incorporated by reference.

### The subpoena can be complied with; all they need is an extension of time.

2.      John Doe ("Doe," "Spectre," "Movant," or "Repondent") argues that the subpoenas cannot be complied with. This is false. I have already explained in my Opposition to Rumble's Motion to Quash that the subpoena can indeed be complied with if they simply requested an extension of time to comply with it.

3.      The fact that I've already explained this, and both Movant and Rumble continue to insist it's impossible to comply, without any explanation as to why an extension of time would not adequately enable them to comply.

4.      At this point, the respondents are squarely acting in bad faith, by outright ignoring entirely counter-arguments that completely defeat their initial arguments.

5.      Public policy supports a finding of bad faith, malice, and even liability when parties blatantly ignore evidence which defeats their positions. That's just another form of "burying one's head in the sand." At this point, all of the Respondents – Google, Rumble, Spectre, and everyone else – are just out and out lying.

6.      This will come up a startling number of times in this Opposition alone, let alone this entire case.

### There is no First Amendment right to copy 100% of a copyrighted work without authorization and usurp the market thereof.

7.      The Defendant claims that his actions are protected under the First Amendment. But there

-1-

is no First Amendment right for him to do what he has done here.

8.　　Here, the Defendant has openly admitted to (A) copying literally 100% of my original video, literally every single last second of it, and (B) usurping the market for my original video. See https://www.youtube.com/watch?v=0Lz4c9ZeFf4. The latter admission is especially important, because that one admission singlehandedly defeats his defense of fair use in its entirety, to the exclusion of all other factors. See Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539, 568 (1985) ("[T]o negate fair use one need only show that if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work. If the defendant's work adversely affects the value of any of the rights in the copyrighted work ... the use is not fair") (citations and quotations omitted).

9.　　Therefore, because his copying of my video was not fair use, his copying is not protected by the First Amendment.

**None of the streams where he reviews my legal filings are at issue in the instant case, and thus should be discarded as irrelevant.**

10.　　The Defendant cites to the multitude of streams where he read and responded to my legal filings, and alleges (without an iota of evidence) that I am seeking to censor those streams.

11.　　I have not sued over any of those streams. The Court can take judicial notice that the related case (Case No. 1:24-cv-01174-MN in this district) is suing only for two things: The unfair copying of my video "Kiwi Farms Goes to the Supreme Court," and his defamation that I do not consider fair use when issuing DMCA Takedowns.

12.　　I fact, it is *literally impossible* that I am suing in order to censor these streams, and you know why? Because my filing of the lawsuit literally ***predates*** nearly all of them! That alone necessarily precludes any possibility that my filing of the lawsuit was done in retaliation for them! See Shaver v. Independent Stave Co., 350 F. 3d 716, 724 (2003) (acknowledging the "straightforward point that it was quite impossible for the [respondent]'s subsequent protected activity to have caused the [adverse action]").

13.　　The related lawsuit against Spectre was filed on October 21, 2024, about a year and a half ago. Meanwhile, *this* very case (the miscellaneous case, where I am seeking to subpoena the Defendant's identity) was filed on October 1, 2024.

14.　　In order for his claims that I am suing merely to censor his streams where he reacts to my legal filings to have literally any basis in reality, in addition to providing *proof* that I am acting with said mindset, he first needs to point to any such streams that actually predate my filing of this lawsuit, otherwise his accusation against me is literally impossible.

-2-

15.    Just imagine how harshly this Court would treat a criminal defendant who, upon learning that he was the suspect of a crime and/or that there was already a warrant out for his arrest, then and only then did he suddenly engage in a panoply of otherwise constitutionally protected activities designed to ruffle the feathers of the establishment (or maybe he was already doing them to some degree, but then he ramps up the intensity and frequency of these activities after learning about the warrant), and then, when the police and prosecutor are undeterred and charge the defendant anyway with the unrelated crime they were already pursuing to begin with, he then asserts the defenses of "prosecutorial vindictiveness" and "first amendment retaliation," even though the warrant clearly predated his 1A-protected activities.

16.    If a criminal defendant were actually stupid enough to try that, this Court would probably throw *the entire library* at him. And yet, that is what Movant is doing here.

17.    Even if he points to any such streams in his Reply brief, I reserve the right to respond substantially to these new facts raised for the first time in his Reply. He still needs to provide some actual _evidence_ that I am actually motivated primarily by a desire to censor his criticism of me, and he has yet to provide any of it. After all, in the aforementioned hypothetical criminal case, even if the 1A-protected conduct predated the warrant or investigation thereof, prosecutorial vindictiveness and first amendment retaliation are not proven simply by proving that the 1A-protected conduct *exists*. As I explained in my Opposition to Rumble's Motion to Quash (and which Movant is entirely ignoring here), if that were all it took, people on the Internet would be empowered to commit heinous, atrocious crimes and get out of being subpoenaed simply by providing some incidental criticism of their victims, and then they could allege merely the *possibility* that the victim might actually be motivated to silence said criticism. Since that prospect is ludicrous on its face, the Court must reject it.

**I never admitted to wanting to use the DMCA to silence or suppress criticism. I have rebuked that accusation many many times. The Respondent is flat-out lying.**

18.    I said, earlier in this brief, that it would come up again that all of the respondents (not just Spectre himself) are flat-out lying by continuing to raise the same objections over and over again that have already been debunked countless times before, without addressing the debunkings I have repeatedly provided. I referenced it in the above paragraph, and here we are a third time.

19.    Respondent and his allies repeatedly parrot the claim that I am merely attempting to "silence/suppress criticism." It has been raised many times in court, but at no point does anyone ever provide even an iota of evidence to support this outlandish claim. Even in this case, Rumble's only "evidence" that I was trying to suppress criticism is the fact that Spectre's Rumble page had criticism of me in it (even if that was never part of the related case; see above for details), and, therefore, it was _**possible**_ that I was motivated primarily by a desire to censor that criticism. But that argument is so ludicrous on its face that I shouldn't even have to address it.

20.     In fact, I have rebuked that accusation many times already. Multiple times, throughout my legal filings this decade, I have repeatedly given the following argument to demonstrate how patently absurd the accusation is:

> "Think about it: Most people freely acknowledge that I have been harassed and doxxed to no end, and that [Respondent] is party to a great chunk of this harassment. See Case 3:22-cv-00546-JSW (Stebbins v. Rebolo)[*], Dkt. 32 (Second Amended Complaint), ¶¶ 52-140 for more details. The harassment, doxxing, and stalking I endured caused me so much stress that I came down with a case of pnuemonia so severe that it could have killed me and ended up hospitalizing me for eight whole days. See Case 4:23-cv-00321-DMR (Stebbins v. SidAlpha)[*], Dkt. 1, ¶¶ 132-141 for more details. Bear in mind that nobody denies that any of this occurred. Many insist that it is not relevant to copyright law, but nearly everyone admits that it's true.
>
> So when [Respondent] (and many others like him) say that I'm just trying to 'punish him for criticizing me,' what he's actually saying is ... I don't actually care about any of that other blatantly illegal and blatantly malum in se stuff. All the harassment, all the doxxing, all the stalking (both cyberstalking and in person stalking), all the defamation, all the hospitalization, and all the copyright infringement that isn't fair use ... I would actually be totally fine with all of that, as long as the criticism – and *only the criticism* – wasn't part of it!
>
> When you look at it that way, the accusation that I'm just trying to silence First Amendment-protected criticism quickly becomes ludicrous on its face, doesn't it?"

21.     Despite me explaining this repeatedly, Respondent and his allies continue to level this baseless claim against me, all the while providing precisely nada evidence in support of it.

22.     In an attempt to pretend like there's some evidence, Movant attaches an email from me where I say I want the ability to protect myself from harassment and doxxing. ***That is not the same thing as silencing criticism***, and Movant knows it. Again, I have repeatedly explained this to Movant and his allies, but they repeatedly ignore me.

23.     Remember that, by presenting a pleading (including a motion) to the Court, the party represents that the factual contentions therein have evidentiary support. See Fed.R.Civ.P. 11(b)(3). A narrow exception exists, but only when the movant explicitly states in his motion that he is invoking it, which Spectre has not done. The fact that Movant and many others like him have repeatedly raised this claim with zero evidence despite me repeatedly rebuking it, and the fact that they never even bother to even attempt to rebut my rebuttal of it, heavily implies that they

---

[*]   In the US District Court for the Northern District of California

know this accusation lacks evidentiary support, yet repeatedly assert it anyway.

24.     For this reason alone, the Motion should be not only denied, but sanctioned for being frivolous under Fed.R.Civ.P. 11(b)(3).

### The fact that the allegedly infringing video may no longer exist is irrelevant.

25.     Next, Movant claims that there is a possibility that the allegedly infringing video no longer exists. His entire evidence for this begins and ends with the fact that I have supposedly not responded to his email inquiry demanding that I hand over a copy thereof (which I am not required to respond to).

26.     For the time being, I will assume, for the sake of argument, that it no longer exists. I neither admit nor deny that I have it. But even if that is true, that does not mean this subpoena deserves to be quashed. If anything, it makes my case against Spectre even stronger.

27.     Think about it: If he does not have, and cannot acquire, a copy of the stream in question, all that means is that he cannot prove fair use. Even though the stream has been taken down, that does not negate my copyright infringement claim in its entirety. At best, it just negates prospective injunctive relief to take it down. It does not negate prospective injunctive relief to stop infringing on my copyright in future, and it certainly does not negate my entitlement to statutory damages.[1]

28.     Again, this has already been explained to Respondent, specifically in my Opposition to Rumble's Motion to Quash, and yet, here he is raising the same argument anyway. Like before, this argument is not made in good faith because he is fully aware of the flaws in it yet continues to raise it anyway.

29.     So as long as I have a nonfrivolous copyright infringement claim, the mere fact that the stream has already been taken down does not negate that, and to that end, Spectre already admits to prima facie copyright infringement, that is to say, he admits that he played my copyrighted video (with the copyrighted background music to boot) on his Rumble channel, with or without added commentary. This means that I don't *need* a copy of the stream in order to "prove" that he did it. He *admits* that he did it; there's your proof right there.

30.     As to fair use, in addition to the fact that he also admitted to facts which defeat his claim to fair use (as described above), lest we forget that the burden of proof ***always*** falls to the proponent of fair use. See Suess v. Comicmix, 983 F. 3d 443, 459 (9th Cir. 2020) ("Not much

---

1   Furthermore, the Court is respectfully reminded that this is an argument on the merits of the related copyright infringement case, and since this Court has already determined that it lacks jurisdiction to hear that case, it must abstain from making any ruling that would have the effect of ruling on the merits thereof. Again, this has been explained before, but Movan just ignored that, par to the course for Spectre and his allies.

about the fair use doctrine lends itself to absolute statements, but the Supreme Court ... have unequivocally placed the burden of proof on the proponent of the affirmative defense of fair use"). This means that, if he does not have his own copy of the stream and does not believe he will ever be able to obtain one, then he can never prove that the stream actually is fair use, even discounting the dispositive facts which he has already admitted to.

31.     Therefore, if a copy of the stream no longer exists, all that means is that my case against him is even more airtight, which in turn means my right to my day in court against him (and, by extension, my right to identify him so I can serve him with process) is likewise strengthened by the lack of a copy of the stream.

32.     Therefore, the motion to quash is frivolous and should be denied.

### My alleged "history of misrepresentation" is irrelevant under FRE 410.

33.     Spectre alleges that I have a "history of misrepresentation." He never explains in his motion how this actually relates to the instant case, and that is telling.

34.     Prior bad acts are irrelevant to proving current conduct. See Fed.R.Evid. 410(b)(1). At best, they can be used to prove mens rea; see FRE 410(b)(2), but in order for Movant to introduce my prior bad acts for that purpose, he must first prove that I actually made a misrepresentation in the instant case. If he can prove that, then maybe my alleged history of misrepresentation (if it even is such; see below) would be admissible to prove that, this time, I also did so knowingly. But first, he must actually show that I … you know … made a misrepresentation at some point in this case! And the Movant has not even *attempted* to show that!

35.     Without that, the Movant is basically saying "Well, he did this bad thing before, so he shouldn't get to win here." That, however, is precisely the attitude  made untenable by FRE 410.

36.     Furthermore, unless the Defendant can articulate how exactly it affects him, personally (which he has not attempted to do), it is against public policy on a multitude of levels to hold this against me in the instant case. See Dr. Gross Laboratories v. McCoy's Laboratories, 8 F. Supp. 391 (Del. 1934) ("If the [respondent] can do no more than show that the complainant has committed some legal or moral offense, which affects the defendant only as it does the public at large, the court must grant the equitable remedy and leave the punishment of the offender to other forums"); see also Dream Games of Arizona, Inc. v. PC onsite, 561 F. 3d 983, 990 (9th Cir. 2009) (same). Furthermore, "the alleged wrongdoing of the plaintiff does not bar relief unless the defendant can show that he has personally been injured by the plaintiff's conduct." Id.

37.     Therefore, the Court must toss out this allegation when considering the motion to quash.

**I do not have a "history of misrepresentation," only a history of being baselessly accused thereof, and even then, never convicted.**

38.     In the event this Court finds this evidence admissible, it should still discard it as having no probative value. This is because Sepctre has not, and cannot, point to any case where I was formally adjudged as having committed intentional misrepresentation. He only points to two times when I've been accused of misrepresentation, but neither of them resulted in me being adjudged guilty of it.

39.     The first time, it was the opposing party (aka a biased entity) making the accusation that I lied (and even then, it was only in passing), but the judge never actually followed up on that. The matter is currently being appealed in the US Court of Appeals for the Ninth Circuit, Case No. 24-1936. However, even then, the allegation that I lied is not before the court in that case because, again, the judge never made the finding that I actually committed any misrepresentation.

40.     However, the Court should still pay attention to that appeal, because the issue being appealed was even more serious than simply whether or not I had actually misrepresented anything. It was whether the district court had violated my constitutional right to due process by even ordering me to take it down in the first place. So I highly recommend that the Court give the briefs in that case a look.

41.     As for the second incident Movant accuses me of, the Court ordered me to show cause why I should not be sanctioned, but the judge never actually judged me guilty. While the movant urges that I only got off on a technicality because I had settled the case at the last minute (a question that will never be answered definitively because the case is now closed), he lies by omission (ironic, considering he is accusing me of misrepresentation) when he says that I filed a "Mutual Notice of Dismissal With Prejudice." This is a lie by omission because he implies that that mutual notice was *all* I filed in response to that order. That, however, is a blatant, bald-faced lie, which means that *he* is the one guilty of misrepresentation in the instant case, not me.

42.     I did in fact file a response to the merits of the show-cause order. See ECF 141 in that case. As you can see from that pleading, I steadfastly denied that I had intentionally lied (the only type of false statements that matter here), and even pointed out how I was the victim of a blatant judicial double standard, pointing out that "So far, the only real consistency in the Court's rulings seems to be 'David Stebbins loses because he's David Stebbins,' regardless of the actual facts and the actual law." See ¶ 25.

43.     So no, I did not commit misrepresentation. I was only ever accused of it, and baselessly accused at that. Therefore, even if the Court deems it admissible, it still has about as much probative value towards … umm … whatever he's trying to prove with it … as an acquittal in criminal court.

-7-

44.     Speaking of the logic of "David Stebbins loses because he's David Stebbins," lest we forget that *this very Court* has already attempted that in *this very case*. It initially denied my petition for supboena without prejudice, giving no explanation whatsoever. When that decision was overturned on appeal, this Court could not come up a justification for denying it again, which proves that the logic which this Court used previously was "David Stebbins loses because he's David Stebbins."

45.     Even Google attempted to use that logic *explicitly*, only for it to fail. During the appeal, Google filed an appellee brief, but the only thing it said in that brief was the fact that other judges have (quite arbitrarily, I might add) declared me vexatious simply because FU. Google literally made no effort to argue against the merits of the petition beyond that. Their logic appears to be that, because of these wholly arbitrary declarations from other courts, I deserve to have to live with that label attached to my name for the rest of my life, no matter where I go (like a convicted sex offender who is required to register as such with any city he ever relocates to), which is functionally identical to saying "David Stebbins loses because he's David Stebbins."

46.     When the Court of Appeals overturned this Court's ruling, it included a footnote where it said that "the response brief addressed no relevant issue … and was unhelpful in resolving the appeal." In other words, the Court of Appeals has *explicitly affirmed* that my past declarations in other courts are irrelevant. Since this Court is bound by the decisions of the US Court of Appeals for the Third Circuit, it is bound to hold my alleged "history" in other courts as irrelevant as well.

## CONCLUSION

47.     Wherefore, premises considered, I respectfully pray that both currently pending motions to quash be denied, and for any other relief to which I may be entitled.

So requested on this, the 15th day of April, 2026.

 */s/ David Stebbins*
David Stebbins (pro se)
123 W. Ridge Ave.,
Apt. D
Harrison, AR 72601
870-204-6516
acerthorn@yahoo.com

-8-